OPINION OF THE COURT
 

 Titone, J.
 

 This appeal raises the issue of what conditions the State Board for Professional Medical Conduct can impose on a doctor placed on probation for professional misconduct. The Appellate Division held that certain conditions placed on the physician’s probation here, namely, the monitoring by another physician, the review of randomly selected medical records, and the maintenance of a specified level of medical malpractice insurance
 
 *443
 
 coverage, were not authorized by Public Health Law § 230-a. Although Public Health Law § 230-a specifically authorizes probation as a penalty for physician misconduct, the court below took a strict view of this statute and held that probation could only be accompanied by conditions specifically mentioned in section 230-a. We reverse and reinstate the agency determination because such a strict interpretation of section 230-a is not warranted and because Public Health Law § 230 (18) specifically authorizes the conditions placed on the physician’s probation in this case.
 

 The State Board for Professional Medical Conduct (the Board) charged Caselnova, a medical doctor, with professional misconduct pursuant to New York Education Law § 6530 (9) (e) and article 33 of the Public Health Law. The Board based the charges on a stipulation by Caselnova, in which he admitted violating regulation 10 NYCRR 80.62 (b) by prescribing the drug Vicodin to three patients without preparing and maintaining a complete record for each patient. On September 14, 1995, the Hearing Committee of the Board sustained the charges and found Caselnova guilty of professional misconduct.
 

 The Hearing Committee suspended Caselnova’s license to practice medicine for two years, but stayed the suspension, prohibiting him from writing prescriptions for controlled substances for two years and ordering him to “complete 40 hours of continuing medical education in the area of prescribing and dispensing controlled substances.” The Hearing Committee also placed Caselnova on probation, requiring that he attend regular meetings with a “monitoring physician” who would review randomly selected medical records from his files to ensure compliance with professional standards. Under Public Health Law § 230 (18), having a monitoring physician triggers the requirement that the disciplined physician maintain a specified level of medical malpractice insurance coverage.
 

 After an unsuccessful attempt to appeal to the Administrative Review Board, the Hearing Committee determination was held to be final. Petitioner then commenced the current CPLR article 78 proceeding to annul the administrative determination. The Appellate Division modified the determination,
 
 sua sponte,
 
 holding that the “penalty is, in part, unauthorized by law” (235 AD2d 864, 866). The Court stated that the “Hearing Committee was required to impose a penalty under Public Health Law § 230-a
 
 (see,
 
 Education Law § 6530). This provision does not permit some of the penalties imposed (increasing medical malpractice insurance, monitoring and review of
 
 *444
 
 petitioner’s records)” (235 AD2d 864, 865-866,
 
 supra).
 
 This Court granted the State Department of Health’s motion for leave to appeal.
 

 This case involves three interrelated statutes: Education Law § 6530, Public Health Law § 230-a, and Public Health Law § 230 (18). Education Law § 6530 defines professional misconduct, and provides that “any licensee found guilty of such misconduct under the procedures prescribed in section two hundred thirty of the public health law shall be subject to penalties as prescribed in section two hundred thirty-a of the public health law.”
 

 Included among the penalties listed in Public Health Law § 230-a are censure and reprimand; suspension of a license with various specified conditions; suspension of a license for a certain period of time; limitation of a license to a particular practice area; revocation or annulment of a license; fines; and further education or training. Section 230-a also states that the State Board for Professional Medical Conduct may “place the licensee on probation with or without imposition of one of the penalties provided pursuant to this section.”
 

 Probation, in turn, is more specifically addressed in Public Health Law § 230 (18) (a). This section states: “The director [of the Office of Professional Medical Conduct] shall have the authority to monitor physicians, physician’s assistants and specialist’s assistants who have been placed on probation pursuant to a determination of professional misconduct by the board” (Public Health Law § 230 [18] [a]). Probation, pursuant to section 230 (18) (a), can be conditioned on review of “randomly select [ed] office records” to ensure “professional performance” as well as “monitor [ing] the licensee’s practice” by another physician or other appropriate monitor. Requiring a monitor also triggers another penalty under section 230 (18) (b): the monitored licensee is required to maintain a specified level of medical malpractice insurance coverage.
 

 The Appellate Division determined that some of the conditions of probation imposed here were not specifically listed in Public Health Law § 230-a, those being monitoring, review of medical records and increased medical malpractice coverage. As a result, it held that these penalties were unauthorized by law. Such a view, however, is not supportable because it represents an overly strict interpretation of the penalty language in Public Health Law § 230-a and ignores Public Health Law § 230 (18) altogether. Although Education Law
 
 *445
 
 § 6530 refers only to the penalties listed in Public Health Law § 230-a, this latter statute specifically authorizes probation “with or without” the imposition of penalties listed in section 230-a. We must, of course, give meaning to all the words of a statute, including probation “without” any other section 230-a penalty.
 

 Limiting probation to conditions or penalties explicitly stated in section 230-a would drain the meaning from the term “probation.” For example, in a case where the State Board only put a physician on probation “without” any of the other penalties listed in section 230-a (which is not the case here), the Board would be prohibited from imposing
 
 any
 
 other terms or conditions on probation as these were not specifically expressed in section 230-a. Probation, in this circumstance, would be meaningless.
 

 Section 230-a clearly contemplates probation without any other section 230-a penalty, but this language does not and cannot mean probation without any other terms or conditions. Probation means that there is some condition which the party on probation must fulfill. The language of section 230-a neither states nor suggests that the Board, having imposed penalties listed in section 230-a, is somehow without the authority to place a physician on probation with additional terms and conditions. The Board here properly imposed specific terms on Caselnova’s probation, including the three not listed in section 230-a: monitoring by another physician, review of randomly selected medical records, and, as a by-product of requiring monitoring, the maintenance of a specified level of medical malpractice insurance coverage.
 

 Furthermore, Public Health Law § 230 (18) contains a specific mandate from the Legislature as to what requirements may encumber a physician on probation. The State Board here did not go beyond that mandate. Instead, the State Board fulfilled it by conditioning the physician’s probation on terms specifically listed in section 230 (18). The three problematic penalties all sprang directly, if not verbatim, from the text of Public Health Law .§ 230 (18). This section not only prescribes specific terms and conditions but also gives authority to “impose upon the licensee such additional requirements as reasonably relate to the misconduct found or are necessary to protect the health of the people pursuant to regulation” (Public Health Law § 230 [18] [a] [x]). Limiting probation to only those conditions or penalties listed in section 230-a would render all the language in Public Health Law § 230 (18) practically useless, which is an unwarranted and unjustifiable result.
 

 
 *446
 
 Accordingly, the order of the Appellate Division should be reversed, with costs, and the determination of the New York State Board for Professional Medical Conduct reinstated in its entirety.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.