■ In the Matter of LISA APTAKER, Petitioner, v ADMINISTRATIVE REVIEW BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [875 NYS2d 604]—

Kane, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent which revoked petitioner's license to practice medicine in New York.

Petitioner was licensed to practice medicine in New York in 1999 and concentrated her practice in obstetrics and gynecology. From October 2000 to August 2002, petitioner held a faculty position at Columbia University and was appointed to the medical staff as an attending physician at the affiliated Harlem Hospital. Petitioner resigned her position at Harlem Hospital and began working at Long Island College Hospital (hereinafter LICH) in September 2002. In August 2003, petitioner resigned her position at LICH in order to take a position with the University of Miami in Florida. In connection therewith, petitioner applied for a Florida medical license in June 2003. In conjunction with her application, petitioner was required to submit to psychological and psychiatric evaluations, which she underwent in September 2003.

In December 2003, petitioner received a notice of intent to deny her Florida license application for, among other reasons, misrepresentations made during the licensing process and the inability to practice medicine with reasonable skill and safety due to a mental condition. Having lost the job opportunity at the University of Miami, petitioner submitted personnel data sheets to the United States Army in April 2004 and again in November 2004 seeking a commission, which she received in early January 2005.

Meanwhile, in December 2004, the Bureau of Professional Medical Conduct (hereinafter BPMC) informed petitioner that a proceeding would be held to determine whether she may be impaired by reason of a mental disability. After a hearing, a Hearing Committee issued a January 2005 order finding reason to believe that petitioner may be impaired and directing petitioner to submit to a psychiatric examination no later than February 18, 2005. Petitioner entered the Army shortly thereafter and has never submitted to the examination.

In March 2005, the Army commenced an investigation of petitioner for having allegedly submitted false statements on her entrance applications. After a hearing, petitioner was found to have knowingly made false statements and was discharged in June 2005. Thereafter, BPMC sent petitioner a letter informing her that the January 2005 order was still in effect and warning petitioner that her failure to comply would constitute professional misconduct.

In September 2005, petitioner was informed that her Florida medical license had been denied based upon findings that she had knowingly misrepresented and concealed material facts regarding the adverse circumstances surrounding her resignation from Harlem Hospital. Later in September 2005, petitioner received a letter from BPMC seeking to schedule an interview regarding various issues, including her failure to comply with the January 2005 order, the denial of her Florida license application and certain representations she had made on her Army applications. When petitioner failed to respond to BPMC's letter, the matter was referred to an investigative committee, after which charges were filed and later amended in March 2006. The charges included three specifications of fraudulent practice, one specification of failure to comply with an order and one specification of having an application for a medical license refused.

After a series of hearings before a Hearing Committee of the State Board for Professional Medical Conduct, the Committee issued a determination and order in August 2006. The Committee sustained three of the charges against petitioner, based upon her failure to comply with the January 2005 order and the charges relating to petitioner's Army applications, but did not sustain the two charges arising from her application for a medical license in Florida. As a result, the Committee suspended petitioner's license for six years, including a four-year outright suspension, followed by a two-year stayed suspension, during which petitioner would be placed on general probation and required to submit to a psychiatric evaluation. Both petitioner and BPMC appealed to respondent. While respondent affirmed

the Committee's determination, it limited its findings of professional misconduct to petitioner's failure to comply with the January 2005 order and her deliberate misrepresentation in her response to the Army's questions concerning the Florida board's inquiries into her health and impairment status. Regarding the penalty, respondent overturned the Committee's suspension and revoked petitioner's license. This CPLR article 78 proceeding ensued, and we now confirm.

As a threshold matter we note that, where, as here, petitioner has sought review from respondent, this Court's inquiry is limited to whether the determination was " 'arbitrary and capricious, affected by error of law or an abuse of discretion' " (*Matter of Sundaram v Novello*, 53 AD3d 804, 807 [2008], *lv denied* 11 NY3d 708 [2008], quoting *Matter of Insler v State Bd. for Professional Med. Conduct*, 38 AD3d 1095, 1097 [2007]; *see Matter of Buckner v State Bd. for Professional Med. Conduct*, 7 AD3d 840, 841 [2004]).

Initially, we reject petitioner's contention that respondent erred in upholding the determination that she committed professional misconduct by failing to comply with the January 2005 order to undergo a psychiatric evaluation. Pursuant to Public Health Law § 230 (7) (a), the State Board for Professional Medical Conduct has the authority to direct a licensee to submit to a psychiatric examination when it has reason to believe that he or she may be impaired by a mental disability, and failure to comply with such order constitutes an instance of professional misconduct (*see* Education Law § 6530 [15]; *see also Matter of Moran v Chassin*, 225 AD2d 814, 815 [1996], *lv denied* 88 NY2d 807 [1996]). Here, the Committee issued an order in January 2005 directing petitioner to undergo a psychiatric examination with which petitioner admittedly did not comply. Therefore, we find a rational basis for respondent's determination that petitioner committed professional misconduct by failing to comply with the order (*see Matter of Ostad v New York State Dept. of Health*, 309 AD2d 989, 991 [2003]; *Matter of Daniels v Novello*, 306 AD2d 644, 644-645 [2003], *lv denied* 100 NY2d 514 [2003]). To the extent that petitioner now argues that it was unnecessary for her to comply with the order because it was improperly issued, premised upon a March 2006 order by Supreme Court (Mills, J.) in New York County barring certain charges against petitioner based upon interviews held in 2003, we note that our review of this issue is foreclosed because petitioner failed to preserve it by raising it before the Committee and respondent (*see Matter of Khan v New York State Dept. of Health*, 96 NY2d 879, 880 [2001]; *Matter of Rattray v Novello*, 46 AD3d 953, 954

[2007]; *Matter of Prado v Novello*, 301 AD2d 692, 692-693 [2003]).

Petitioner next challenges respondent's determination that she engaged in the fraudulent practice of medicine by knowingly making false statements with the intent to mislead or deceive on her April 2004 and November 2004 applications for the Army. A charge of professional misconduct by way of fraudulent practice may be sustained when a physician submits an application that contains an intentional misrepresentation or the concealment of a known fact, and intent or knowledge may be inferred from the surrounding circumstances (*see* Education Law § 6530 [2]; *Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d 927, 929 [2007], *lv denied* 10 NY3d 701 [2008]; *Matter of Solomon v Administrative Review Bd. for Professional Med. Conduct, Dept. of Health*, 303 AD2d 788, 789-790 [2003], *lv denied* 100 NY2d 505 [2003]; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 799-800 [1999], *lv denied* 95 NY2d 756 [2000]). We find ample evidence to support respondent's finding that petitioner falsely answered questions on her April 2004 and November 2004 Army personnel data sheets. On those applications, petitioner answered "no" to a question that asked whether she had ever "been required to appear before a medical or state regulating authority, regardless of the result, concerning [her] health status as an impaired, hindered, or otherwise restricted practitioner." In addition, on her November 2004 security clearance application, petitioner answered "no" to the question, "In the last 7 years, have you consulted a mental health professional (psychiatrist, psychologist, counselor, etc.)." These answers stood in direct contravention to the fact that petitioner had been required to submit to psychological and psychiatric evaluations by the Florida Department of Health in conjunction with her license application in September 2003. Thus, deferring to respondent on issues of credibility (*see Matter of Insler v State Bd. for Professional Med. Conduct*, 38 AD3d at 1097; *Matter of Tulier-Pastewski v State Bd. for Professional Med. Conduct*, 13 AD3d 918, 919 [2004]), we find the record amply supports respondent's finding of professional misconduct based upon those intentional misrepresentations on petitioner's Army applications.

The penalty imposed by respondent was not disproportionate to the offense. Respondent is empowered to impose a harsher penalty than the Committee, and such penalty will only be disturbed if it is "so disproportionate to the offense" that it is "shocking to one's sense of fairness" (*Matter of Chen v*

*Administrative Review Bd. of State Bd. for Professional Med. Conduct*, 3 AD3d 617, 617 [2004] [internal quotation marks and citation omitted]; *see Matter of Papiasvili v New York State Dept. of Health*, 262 AD2d 814, 815 [1999], *lv dismissed* 94 NY2d 839 [1999]). Considering petitioner's failure to comply with the January 2005 order and her intentional misrepresentations on the Army applications, along with respondent's finding that petitioner lied in her testimony to the Committee, revocation of her license does not shock our sense of fairness (*see Matter of Jadoo v DeBuono*, 235 AD2d 644, 645 [1997]; *Matter of Glassman v Commissioner of Dept. of Health of State of N.Y.*, 208 AD2d 1060, 1061-1062 [1994], *lv denied* 85 NY2d 801 [1995]; *Matter of Sung Ho Kim v Board of Regents of Univ. of State of N.Y.*, 172 AD2d 880, 882 [1991], *lv denied* 78 NY2d 856 [1991]; *cf. Matter of Zharov v New York State Dept. of Health*, 4 AD3d 580, 581 [2004]).

We have examined petitioner's remaining contentions, including that she was deprived of a fair hearing, and found them to be without merit.

Cardona, P.J., Rose and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.