■ In the Matter of ANDRE B. CELESTIN, Petitioner, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Respondents. [840 NYS2d 475]—

Carpinello, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

The sole issue before this Court is the propriety of a determination by respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB) to revoke petitioner's medical license following an expedited hearing pursuant to Public Health Law § 230 (10) (p). The hearing stemmed from petitioner's felony conviction, following a guilty plea, under the federal Medicare anti-kickback statute (see 42 USC § 1320a-7b [b] [1] [A]). Specifically, petitioner admitted to accepting $6,000 in illegal referral fees from another doctor over a six-year period and was sentenced to a period of home confinement, probation and a fine.

In overturning the recommended penalty of the Hearing Committee[1] and revoking petitioner's license, which the ARB is clearly empowered to do (see Matter of Kabnick v Chassin, 89 NY2d 828, 829-830 [1996]; Matter of Novendstern v Administra-

---

1. The hearing committee recommended that petitioner be censured and reprimanded and that his license be suspended for three months.

*tive Review Bd. of State Bd. for Professional Med. Conduct*, 15 AD3d 701, 702 [2005]), the ARB cited petitioner's violation of the public trust in accepting these illegal fees and his "less than frank" testimony at the hearing, testimony which the ARB found demonstrated a lack of remorse on his part and further suggested that he remains at risk to repeat the misconduct. The ARB also noted that petitioner's deliberate misconduct took place over an extended period of time and found no mitigation in his argument that his misconduct violated no state law.

In our view, even taking into consideration petitioner's self-proclaimed modest lifestyle, dedication to underprivileged populations and contributions to society generally, we are unable to conclude that the penalty of revocation is so incommensurate with the offense as to shock one's sense of fairness (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]). Indeed, "[t]his analysis is necessarily dependent upon the particular facts and circumstances of each case" (*Matter of Novendstern v Administrative Review Bd. of State Bd. for Professional Med. Conduct, supra* at 702). Here, like the ARB, we find no mitigation in the fact that petitioner did not violate any state law since he most certainly violated a federal law which makes it a felony to knowingly receive any remuneration for referring a Medicare patient to another physician.

Also in mitigation, petitioner argues that no patient was harmed by his conduct and that the money he accepted over the years (i.e., $6,000) was "not a particularly large amount." As to the latter contention, we are compelled to point out that petitioner refused to accept responsibility for even this sum at the hearing, claiming that he only accepted $1,600 in illegal fees. To this end, we note that the refusal to accept responsibility for prior wrongful conduct is a significant factor in assessing an appropriate penalty (*see Matter of Zharov v New York State Dept. of Health*, 4 AD3d 580, 581 [2004]). More importantly, the "[l]ack of financial gain or absence of patient harm do not preclude a penalty of license revocation" (*id.* at 580). Finally, we are likewise unpersuaded by petitioner's argument that the terms of his criminal sentence, which permitted him to continue working while placed on home confinement, lend support to his argument that revocation of his license was unreasonable and arbitrary.[2]

Crew III, J.P., Peters, Mugglin and Kane, JJ., concur. Adjudged

---

**2.** According to petitioner, "the district court *recognized* that society's interests are served by allowing this caring and compassionate physician to

that the determination is confirmed, without costs, and petition dismissed.

continue serving the poor and pursue his advanced education consistent with society's goals. . . [and] that the federal court's penalty *demonstrates* that there was no concern that [he] poses any danger to the public or that there exists any question of the quality of the care he renders or that he is unfit in any way to practice medicine" (emphasis added). Suffice it so say, these bold assertions are not substantiated in this record.